Milton Harold JACKSON and Mary Ann Jackson *v.*
MUNDACA FINANCIAL SERVICES, INC.

01-893                                                76 S.W.3d 819

Supreme Court of Arkansas
Opinion delivered May 30, 2002

*McMath, Vehik, Drummond, Harrison, & Ledbetter, P.A.*, by: *Hank Bates*, for appellant.

*Wilson & Associates, P.L.L.C.*, by: *Patrick J. Benca* and *Daniel L. Parker*, for appellee.

RAY THORNTON, Justice. This case involves a mortgage and note made by appellants Milton H. Jackson and Mary A. Jackson to Twin Arkansas Home Improvements on May 20, 1985. Appellee Mundaca Financial Services, an assignee and the current holder of the mortgage, filed suit for foreclosure on

appellants' home on September 10, 1999. Appellants answered and filed a counterclaim, alleging that the note and mortgage violated the usury laws of Arkansas.

At the bench trial, appellants argued that the interest rate was usurious under Article 19, Section 13(a)(1), of the Arkansas Constitution because it was greater than five percent above the Federal Reserve discount rate at the time of the contract. Appellee did not dispute that the Federal Reserve discount rate was eight percent on the date the note was made, nor that the interest rate on the note was 16.484% — 8.484% greater than the Federal Reserve discount rate.

Appellee consistently contended that the Arkansas usury ceiling was preempted by certain federal laws. Initially, appellee cited that the loan was a Federal Housing Agency (FHA) approved Title I home improvement loan, and therefore Arkansas's usury law was preempted under 12 U.S.C. § 1735f. The chancellor rejected that argument because appellee failed to prove at trial that either Twin Arkansas Home Improvement Co. or American Savings and Loan was approved by the U.S. Department of Housing and Urban Development (HUD) to make Title I loans to the State of Arkansas at the time the loan was made. The chancellor's reasoning was that because these entities were not regulated by HUD, the protection from predatory lending practices did not attach, and therefore, the federal preemption provisions did not apply. We agree.

On June 30, 2000 the chancellor entered judgment for appellants, finding:

1) the mortgage and note were void as to unpaid interest; and
2) Mundaca Financial Services should pay the Jacksons $56,697.42 (the amount equal to doubling the amount of interest paid at that time, and then reducing that figure by the principal still due on the loan); and
3) the Jacksons were due $5,145.00 in attorneys' fees pursuant to Ark. Code Ann. § 4-57-108.

On July 10, 2000, appellee filed a motion for reconsideration, raising the new argument that because the Resolution Trust Corporation (RTC) was a prior assignee, appellants' usury claim is

barred by the "federal holder in due course" rule and/or the federal common-law *D'Oench Duhme* doctrine.[1] On August 8, 2000, the chancery court set aside the order in favor of the Jacksons to allow time to consider this new argument. We conclude that the chancellor erred in setting aside her June 30, 2000 judgment, and we reinstate the June 30, 2000 decision.

After reopening the June 30, 2000 decision in a letter opinion dated February 20, 2001, the chancellor rejected appellee's federal common-law defenses, relying on an Eighth Circuit case that stated:

> In light of the United State Supreme Court's decision in *O'Melveny & Meyers v. FDIC*, 512 U.S. 79 (1994), we conclude that the extensive statutory framework of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA — or 12 U.S.C. § 1823(e)) implicitly excludes federal common law defenses not specifically mentioned in the statute.

*Divall Insured Income Fund v. Boatmen's First National Bank*, 69 F.3d 1398 (8th Cir. 1995). The chancellor held that the court in *O'Melveny* removed the federal common-law *D'oench Duhme* doctrine and the federal holder-in-due-course doctrine as separate bars applicable to Mundaca's defense, and that for the defense to be barred, it must be by either a specific provision of FIRREA or by state law. The chancellor then rejected appellee's argument that 12 U.S.C. § 1823(e) applied in this case because the usurious interest rate was included in the note itself.

The chancellor, considering arguments that were not made before the original judgment, then turned to state law and found that appellee was a holder in due course and ruled that under Ark. Code Ann. § 4-3-305 (1991), a holder in due course is immune from usury claims.[2] The chancellor then entered judgment against appellants in the amount of $3,772.22 (the accrued interest of

---

[1] Briefly, the *D'oench Duhme* doctrine is the common law rule barring the creation of secret agreements, unrecorded in bank records, and used as defenses from payment of a promissory note. *See*, *D'oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942).

[2] Ark. Code Ann. § 4-3-305 states in pertinent part:

> (a) Except as stated in subsection (b), the right to enforce the obligation of a party to pay an instrument is subject to the following:

$1,390.48, plus added costs, expenses and fees equal to $1,066.03). The chancery court clerk disbursed $6,228.73 to appellee from funds that appellants previously deposited into the registry of the court.

On March 30, 2001, appellants filed a motion for reconsideration. They argued that appellee was not a holder in due course under Arkansas law because the note contained the language that Federal Trade Commission (FTC) requires that expressly eliminates limitations on assignee liability for debtor claims and defenses:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVER HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

Additionally, appellants contended that Arkansas usury law is governed by Article 19, Section 13, of the Arkansas Constitution and that Ark. Code Ann. § 4-3-305 does not create an exception to the constitutional provisions.

---

(1) A defense of the obligor based on . . . (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor . . .

(2) A defense of the obligor stated in another section of this chapter or a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right o payment under a simple contract; and

(3) A claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument; but the claim of the obligor may be asserted against a transferee of the instrument only to reduce the amount owing on the instrument at the time the action is brought.

(b) The right of a holder in due course to enforce the obligation of a party to pay the instrument is subject to defenses of the obligor stated in subsection (a)(1), but is not subject to defenses of the obligor stated in subsection (a)(2) or claims in recoupment stated in subsection (a)(3) against a person other than a holder.

On May 1, 2001, the chancellor denied appellants' motion for reconsideration, finding that appellants' loan should not be characterized as a "consumer loan."

On May 24, 2001, appellants filed this appeal. On June 6, 2001, appellees filed the cross-appeal on the limited issue of the insufficiency of the attorneys' fees awarded to them. We took this appeal in order to review the chancellor's findings relating to the existence of a "consumer loan" and the finding that Ark. Code Ann. § 4-3-305 provides immunity for a holder in due course from the constitutional prohibition of usury. However, we do not reach these issues because we have determined that the chancellor exceeded her authority in reconsidering her judgment of June 30, 2000. Accordingly, we hold that the judgment dated June 30, 2000, should be reinstated.

While a chancery court's findings of fact shall not be set aside unless clearly erroneous, a chancellor's conclusions of law are not given the same deference. *Vowell v. Fairfield Bay Community Club, Inc.*, 346 Ark. 270, 58 S.W.3d 324 (2001). Accordingly, if a chancellor erroneously applies the law and an appellant suffers prejudice, the erroneous ruling should be reversed. *Id.*

Appellee first raised the claim that it was immune from the constitutional prohibition against usury because it was a holder in due course in its July 10, 2000, motion for reconsideration following the chancellor's initial judgment in favor of the Jacksons. Appellee's argument states an affirmative defense. Rule 8(c) of the Arkansas Rules of Civil Procedure requires a party to raise affirmative defenses in the pleadings: "In responding to a complaint, counterclaim, cross-claim or third party claim, a party shall set forth affirmatively . . . estoppel . . . and any other matter constituting an avoidance or affirmative defense." Appellants argue that appellee's defenses premised upon 12 U.S.C. 1819 and by holder in due course arguments are in the nature of estoppel and affirmative defenses that must be pled prior to trial. We agree and conclude that those defenses may not be raised after the conclusion of the trial. *See,* Ark. R. Civ. P. 8(c).

Claiming holder-in-due-course status is by nature an estoppel defense in that if a defense against paying the note is

proven, the respondent may seek to cut off the defense by proving that the plaintiff is a holder in due course. *See*, 11 AM. JUR. 2d *Bills and Notes* § 263 (2001). Furthermore, all elements related to holder-in-due-course status must be proven by the claimant of that status by affirmative proof. *See*, 12 AM. JUR. 2d *Bills and Notes* § 665 (2001). Defenses that must be set forth affirmatively must be raised prior to trial or be waived. *See*, 12 AM. JUR. 2d *Bills and Notes* § 656 (2001).

It has been well established that Rule 8 requires that affirmative defenses including estoppel defenses, such as the holder-in-due-course doctrine, be argued in the pleadings. *Wright v. Langdon*, 274 Ark. 258, 623 S.W.2d 823 (1981). In *Wright*, we held that the trial court did not abuse its discretion in denying a third-party defendant's attempt to amend its answer and assert the defense of limitation and laches, where pleadings had been joined for a year. *Id.* Defendants were stationed in Alaska, and all the parties had testified, and the case was about to be completed when the third-party defendant tried to interpose new defenses. *Id.* This court held that third-party defendant's action was barred by Ark. R. Civ. P. 8. *Id.*

Appellants also cite Arkansas Rule of Civil Procedure 59(a)(8) as a bar to consideration of appellee's new claim asserted in its motion for reconsideration. Appellant argues that appellee did not assert any of the grounds for a new trial set forth in Ark. R. Civ. P. 59, and the chancellor should not have considered the new argument based on the holder-in-due-course affirmative defense.

Arkansas Rule of Civil Procedure 59(a) states in pertinent part:

> A new trial may be granted to all or any of the parties on all or part of the claim on the application of the party aggrieved, for any of the following grounds materially affecting the substantial rights of such party:
>
> (1) any irregularity in the proceedings or any order of court or abuse of discretion by which the party was prevented from having a fair trial; (2) misconduct of the jury or prevailing party; (3) accident or surprise which ordinary prudence could not have

prevented; (4) excessive damages appearing to have been given under the influence of passion or prejudice; (5) error in the assessment of the amount of recovery, whether too large or too small; (6) the verdict or decision is clearly contrary to the preponderance of the evidence or is contrary to the law; (7) newly discovered evidence material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial; *(8) error of law occurring at the trial and objected to by the party making the application.*

*Id.* (Emphasis added.)

■ First, we must clarify that, under certain circumstances, motions may be liberally interpreted by the court. *Slaton v. Slaton,* 330 Ark. 287 (1997). As we stated in *Slaton:*

> We have previously held that motions should be liberally construed, and that courts should not be blinded by titles but should look to the substance of motions to ascertain what they seek. *Cornett v. Prather,* 293 Ark. 108, 737 S.W.2d 159 (1987). For example, in *Jackson v. Arkansas Power & Light Co.,* 309 Ark. 572, 832 S.W.2d 224 (1992), we held that a motion to vacate which stated that the judgment was void because "it is contrary to the facts, public policy and is clearly contrary to the preponderance of the evidence" was really a motion for a new trial under Ark. R. Civ. P. 59(a)(6). As in *Jackson,* Teresa claimed in her motion for reconsideration that the divorce decree was contrary to the preponderance of the evidence, which is a specifically enumerated ground for a new trial under Ark. R. Civ. P. 59(a)(6). Thus, we hold that Teresa's September 26, 1991, pleading was a motion for a new trial.

*Slaton, supra.*

■ In the instant case, appellee's motion for reconsideration asserted the new argument that because the RTC was a prior assignee, appellants' usury claim is barred by the "federal holder in due course" rule and/or the federal common-law *D'Oench Duhme* doctrine. The motion for reconsideration did not rely on any of the eight possible grounds for a new trial described in Ark. R. Civ. P. 59(a)(1)-(8). Rather, appellee's motion for reconsideration was an attempt to raise an estoppel defense they had not considered previously, clearly not the purpose of Ark. R. Civ. P.

59(a). While appellees framed their motion for reconsideration as a motion for a new trial, they did not state any of the eight possible grounds for a new trial.

In *Nazarenko v. CTI Trucking Co.*, 313 Ark. 570, 856 S.W.2d 869 (1993), we held that a new trial could be granted where an error occurred at trial, but *Nazarenko* is distinguishable from the instant case in that the party making the application for the new trial objected to the error at trial. In *Burnett v. Fowler*, 315 Ark. 646, 869 S.W.2d 694 (1994), we held that the trial court did not abuse its discretion by granting a new trial after concluding that evidence that had been admitted and objected to by the party asking for a new trial, was irrelevant and overly prejudicial, substantially affecting the outcome of the trial.

■ ■ Appellants claim that because appellee made no mention of the holder-in-due-course argument and did not contend for consideration of that principle of law at any time during the pretrial pleadings, brief, or at the January 6, 2000 trial, that the trial court erred in considering the holder-in-due-course argument when determining whether a new trial should be granted. We agree and conclude that Mundaca was barred by Ark. R. Civ. P. 8 from raising the issue of whether it was a holder in due course in its motion for reconsideration. Accordingly, we decline to address the issues on appeal relating to appellee's holder-in-due-course status. We hold that the chancellor erred in granting the motion for reconsideration, and we conclude that the chancellor's original order in favor of the Jacksons entered on June 30, 2000, should be reinstated. For that reason appellee's cross-claim for attorneys' fees is moot.

We reverse and remand to the trial court for further action consistent with this opinion.